1  CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

2

MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney
5  150 Almaden Boulevard, Suite 900
San Jose, CA 95113
6  Telephone:    (408) 535-5040
Facsimile:     (408) 535-5081
7  Email: michael.pitman@usdoj.gov

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11  UNITED STATES OF AMERICA,              Criminal No. 5:25-cr-00033-PCP

12        Plaintiff,                       UNITED STATES' SENTENCING
                                           MEMORANDUM
13     v.
                                           Date:      September 24, 2025
14  TAE HYUN LEE,                          Time:      10:00 AM
                                           Place:     Courtroom 8, San Jose
15        Defendant.

16

17        The United States of America ("United States") hereby respectfully submits the following

18  Sentencing Memorandum regarding Defendant Tae Hyun Lee ("Defendant") pursuant to Crim. L.R. 32-

19  5(b):

20  **I.     SUMMARY OF UNITED STATES' SENTENCING RECOMMENDATIONS**

21        On February 7, 2025, Defendant was charged via Information with three counts of aiding and

22  assisting the preparation and presentation of a false tax return in violation of 26 U.S.C. § 7206(2).  On

23  May 14, 2025, Defendant pleaded guilty to Count Two by way of a Plea Agreement entered into

24  pursuant to Rule 11(c)(1)(A) and (c)(1)(B).  *See* Dkt. No. 11.  In the Plea Agreement, the parties agreed

25  that the adjusted offense level is 13, that the Court will impose restitution of at least $439,028 to the

26  Internal Revenue Service ("IRS"), and that the United States will recommend a term of imprisonment no

27  longer than 12 months.

28

UNITED STATES' SENTENCING MEMORANDUM            1
CRIMINAL NO. 5:25-CR-00033-PCP

1    The Presentence Investigation Report ("PSR") concurs with the United States Sentencings

2  Guidelines calculations set forth in the Plea Agreement.  The United States is in agreement with the

3  PSR's calculations, but not with its recommendations.  The United States respectfully recommends that

4  that Defendant be sentenced to: A term of imprisonment of 12 months; a three-year term of supervised

5  release; a fine of $5,500; an order to pay restitution in the amount of $439,028 to the IRS; and an order

6  to pay a special assessment of $100.

7  II.    SUMMARY OF THE CASE

8    The facts of the case are set forth in great detail in the Plea Agreement and PSR.  In sum,

9  Defendant is self-employed and owns and operates Gentle Chiropractic Care ("GCC").  GCC leases

10  office space in Sunnyvale and Oakland.  Defendant treats patients in both offices, and also subleases

11  portions of both offices.  Most of Defendant's chiropractic patients are people who have been injured in

12  automobile accidents, and he receives payments from personal injury law firms, insurance companies,

13  and individuals.  Defendant also receives rental income from subleasing office space.  Some of these

14  payors issue Form 1099s to Defendant or GCC, and others do not

15    Beginning no later than 2016, Defendant began cashing some of the checks he received for

16  services and rent at a money service business ("MSB") located in Oakland.  The MSB's bank records

17  indicate that Defendant cashed approximately $516,329, $558,037, and $413,898 worth of checks in

18  2018, 2019, and 2020.  Defendant also deposited small amounts of business and rental income into his

19  personal bank accounts, and accepted some payments via Zelle and Venmo accounts attached to his

20  personal bank accounts.

21    GCC is operated as a sole proprietorship and Defendant reports the business's income on a

22  Schedule C to his personal Form 1040s.  Defendant's joint Form 1040s, including Schedule Cs for GCC

23  for the years 2017 through 2020, were prepared by a Certified Public Accountant who prepared the tax

24  returns based on information provided by Defendant, including tax forms (including Form 1099s),

25  payroll records, and Defendant's own handwritten notes regarding income and expenses.  Defendant

26  never provided bank statements to the Certified Public Accountant, and he never told the Certified

27  Public Accountant about the checks he cashed.  Once the tax returns were drafted, the Certified Public

28  Accountant sent them to Defendant before filing them electronically on his behalf.

UNITED STATES' SENTENCING MEMORANDUM            2
CRIMINAL NO. 5:25-CR-00033-PCP

1    In this way, Defendant's tax returns substantially underreported his income because the income

2 from the checks Defendant cashed was not reported.  Essentially, Defendant split his taxable income

3 into two streams.  The first stream, from payors Defendant expected to issue Form 1099s, was deposited

4 in the business bank account, provided to the Certified Public Accountant, and reported as income on

5 Defendant's tax returns.  The second stream, from payors Defendant did not expect to issue Form 1099s,

6 was converted to cash or deposited into Defendant's personal bank accounts, not provided to the

7 Certified Public Accountant, and not reported as income on Defendant's tax returns.  The division was

8 not perfect, and Defendant did report some income that was not included on Form 1099s for some years,

9 and vice versa, but the overall pattern was consistent.

10    In total, Defendant's failure to report Schedule C gross receipts and rental income during the tax

11 years 2018, 2019, and 2020, resulted in tax losses of $109,243, $185,688, and $144,097, respectively,

12 $439,028 in total.

13 **III.     SENTENCING CALCULATION**

14    Trial courts, "while not bound to apply the Guidelines, must consult those Guidelines and take

15 them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 267 (2005); *see also Gall*

16 *v. United States*, 552 U.S. 38, 51 (2007) (stating that the failure to calculate, or improperly calculating,

17 the guidelines range constitutes a procedural error at sentencing).

18    **A.     Base Offense Level**

19    Part T of Chapter Two of the Guidelines contains the provisions governing most tax crimes.

20 Section 2T1.4 governs the sentencing of defendants who have aided, assisted, procured, counseled, or

21 advised tax fraud in violation of Section 7206(2).  To determine the base offense level for such

22 violations, the Guidelines require the calculation of the tax loss attributable to the defendant, and then

23 the application of the tax loss table contained in USSG § 2T4.1 to set the base offense level.  Under

24 Section 2T4.1(a)(2), the tax loss is defined as "the total amount of loss that was the object of the offense

25 (i.e., the loss that would have resulted had the offense been successfully completed)," USSG §

26 2T1.1(c)(1), resulting from the defendant's aid, assistance, procurance or advice.

27    In determining the base offense level, a court must include all relevant conduct.  *See* USSG §

28 1B1.3(a).  In calculating the tax loss, a court should consider both charged and uncharged conduct, and

1 even acquitted conduct, if it finds the loss proven by a preponderance of the evidence. *See generally*

2 *United States v. Watts*, 519 U.S. 148, 156-57 (1997); *see also United States v. Mercado*, 474 F.3d 654,

3 656-57 (9th Cir. 2007). In tax cases, the Guidelines specifically provide for the inclusion of the tax loss

4 resulting from all known tax fraud, in all years, as relevant conduct. *See* USSG § 2T1.1, comment. (n.2)

5 ("[A]ll conduct violating the tax laws should be considered as part of the same course of conduct or

6 common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated."). As an

7 example, the Guidelines provide that a continuing pattern of violations of the tax laws by the defendant

8 illustrates conduct that is part of the same course of conduct or common scheme or plan. *Id.* In this

9 case, the tax loss for each of the years 2018, 2019, and 2020, are included in Defendant's relevant

10 conduct despite the fact that he pleaded guilty only to the Count associated with 2019.

11 The parties have agreed that Defendant's concealment of income for the years 2018, 2019, and

12 2020, resulted in a tax loss of at least $439,028. A tax loss of more than $250,000 but less than

13 $550,000 corresponds to a base offense level of 18 under USSG § 2T4.1(H).

14 **B.    Zero Criminal History**

15 Recent amendments to the Guidelines provide for a two-offense-level reduction for offenders

16 who satisfy the criteria set forth in USSG §§ 4C1.1(a)(1) through (a)(10), including presenting zero

17 criminal history points. The Court should grant a two-offense-level credit in this case because all the

18 criteria set forth at Sections 4C1.1(a)(1) through (a)(10) are satisfied.

19 **C.    Acceptance of Responsibility**

20 Defendant should receive a three-offense-level credit for acceptance of responsibility under

21 USSG § 3E1.1. Credit for acceptance of responsibility applies only to a defendant who "clearly

22 demonstrates acceptance of responsibility for his offense." USSG § 3E1.1. In evaluating whether the

23 credit should apply, it is appropriate to consider whether the defendant has truthfully admitted the

24 conduct comprising the "offense(s) of conviction," and also truthfully admitted, or not falsely denied,

25 any relevant conduct. *Id.* comment. (n.1(A)). Here, the full three-offense-level credit is appropriate

26 because Defendant has truthfully admitted the relevant conduct sufficiently in advance of trial.

27 **D.    Resulting Guidelines Adjusted Offense Level**

28 The Plea Agreement, the PSR, and the United States all agree that Defendant's adjusted offense

1  level is 13.  Based on a total offense level of 13, and because Defendant is in Criminal History Category

2  I, the Guidelines range is 12 to 18 months' imprisonment.

3  **IV.    SECTION 3553(a) FACTORS**

4         Pursuant to the Sentencing Reform Act, 18 U.S.C. § 3553 the Court "shall impose a sentence

5  sufficient, but not greater than necessary, to comply with the purposes set forth in" Section 3553(a), and,

6  in so doing, the Court "shall consider," among other things: (1) the nature and circumstances of the

7  offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (A) to

8  reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for

9  the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further

10  crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training,

11  medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences

12  available; (4) the kinds of sentence and the sentencing range established by the guidelines; (5) any

13  pertinent policy statement; and (6) the need to avoid unwarranted sentence disparities among defendants

14  with similar records who have been found guilty of similar conduct.  *See* 18 U.S.C. § 3553(a).

15         In this case, these factors support the sentence recommended by the United States, especially the

16  nature and circumstances of the offenses, and the history and characteristics of Defendant.  The need for

17  a sentence that reflects the seriousness of the offense and affords an adequate deterrence to criminal

18  conduct is also particularly applicable here.  General deterrence occupies an especially important role in

19  sentencing for criminal tax offenses, because criminal tax prosecutions are relatively rare:

20         The criminal tax laws are designed to protect the public interest in preserving the integrity of the
       nation's tax system.  Criminal tax prosecutions serve to punish the violator and promote respect for
21     the tax laws.  Because of the limited number of criminal tax prosecutions relative to the estimated
       incidence of such violations, deterring others from violating the tax laws is a primary consideration
22     underlying these guidelines.  Recognition that the sentence for a criminal tax case will be
       commensurate with the gravity of the offense should act as a deterrent to would-be violators.

23

24  USSG ch 2, pt. T, introductory comment.; *see also United States v. Ture*, 450 F.3d 352, 359 (8th Cir.

25  2006) (vacating sentence where the District Court "failed to consider the importance of a term of

26  imprisonment to deter others from stealing from the national purse."); *United States v. Burgos*, 276 F.3d

27  1284, 1289, n.6 (11th Cir. 2001) ("For a judge sentencing a defendant convicted of tax evasion, the chief

28  concern may be general deterrence.").  One can imagine an unscrupulous business owner performing a

1  fairly simple calculus: If the financial gains from tax fraud are not outweighed by the consequences of

2  being caught, taking into account the fact that tax prosecutions are rare, then cheating simply makes

3  good business sense.  This calculus is only disrupted if the consequences incurred in the unlikely event

4  of a prosecution are serious.  For that reason, a meaningful sentence is necessary to specifically deter

5  Defendant, and also to deter similarly situated individuals who may be tempted to cheat on their taxes.

6  **V.      RESTITUTION**

7        The Plea Agreement, the PSR, and the United States all agree that Defendant should be ordered

8  to pay restitution of $439,028 to the IRS.  The Court is authorized to order restitution as a condition of

9  supervised release pursuant to 18 U.S.C. § 3583(d).  *See United States v. Batson*, 608 F.3d 630, 632-35

10  (9th Cir. 2010).  Moreover, both the Mandatory Victim Restitution Act of 1996 ("MVRA") (largely

11  codified at 18 U.S.C. § 3663A), and its predecessor the Victim and Witness Protection Act of 1982

12  ("VWPA") (largely codified at 18 U.S.C. §§ 3663, 3664), provide that restitution may be ordered when

13  agreed to by the parties in a plea agreement even if the plea agreement contemplates payment to parties

14  who would not otherwise be entitled to restitution, or payment of amounts greater than would otherwise

15  be permitted.  *See* 18 U.S.C. § 3663A(a)(3) ("The court shall also order, if agreed to by the parties in a

16  plea agreement, restitution to persons other than the victim of the offense."); 18 U.S.C. § 3663(a)(3)

17  ("The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea

18  agreement.").  Here, the parties have agreed that Defendant should be ordered to pay restitution to the

19  IRS in the amount of $439,028.

20        To assist the clerk of court in processing restitution payments, the United States requests the

21  Court include the IRS's centralized location for collection of restitution payments in the judgment:

22        IRS - RACS
        Mail Stop 6261, Restitution
23        333 W. Pershing Ave.
        Kansas City, MO 64108

24

25        If the Court orders Defendant to pay restitution to the IRS, the IRS will use the restitution order

26  as the basis for a civil assessment.  *See* 26 U.S.C. § 6201(a)(4).  Defendant does not have the right to

27  challenge the amount of any restitution-based assessment.  *See* 26 U.S.C. § 6201(a)(4)(C).  Neither the

28  existence of a restitution payment schedule, nor Defendant's timely payment of restitution according to

that schedule, will preclude the IRS from immediately collecting the full amount of any restitution-based assessment, including by levy and distraint under 26 U.S.C. § 6331. Interest on any restitution-based assessment will accrue under 26 U.S.C. §§ 6601 and 6621 from the last date prescribed for payment of the liability that is the subject of the restitution order to the date the IRS receives payment.

## VI.     FINE

The United States agrees with the PSR's recommendation that Defendant be ordered to pay a fine of $5,500. The PSR indicates that the fine range for this offense is $5,500 to $55,000, *see* PSR at ¶ 58 (citing USSG §5E1.2(c)(3)), and recommends a low-end fine. *See* PSR at Sentencing Recommendation. The United States agrees. Defendant clearly has the ability to pay a fine, *see* PSR at ¶¶ 47 & 48, and the guidelines require a fine in every case unless the defendant establishes an inability to pay. *See* USSG §5E1.2(a) & (d). Additionally, given the fact that Defendant profited enormously from his crime, a fine in this case is appropriate to advance the purposes set forth in Section 3553(a)(2)(A) & (B).

## VII.    CONCLUSION

Defendant should be sentenced to a term of imprisonment of 12 months, a three-year term of supervised release, and a fine of $5,500. The Court should also order Defendant to pay restitution to the IRS in the amount of $439,028, and a special assessment of $100.

DATED: September 17, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

s/ Michael G. Pitman
MICHAEL G. PITMAN
Assistant United States Attorney